**IMPORTANT NOTICE: Courtesy copies of documents you file should NOT be provided to any judge. All communications with the court SHALL ONLY be by document filed with the Clerk of Court.**

RECEIVED
USDC, WESTERN DISTRICT OF LA.
TONY R. MOORE, CLERK
DATE  9 / 23 / 10
BY  SDB

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| CLARENCE SCHREANE,<br>          Plaintiff | CIVIL ACTION<br>SECTION "P"<br>NO. 1:09-cv-01252 |
| VERSUS | |
| JOE KEFFER, et al.,<br>          Defendants | JUDGE JAMES T. TRIMBLE<br>MAGISTRATE JUDGE JAMES D. KIRK |

REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Before the court is a motion to dismiss or for summary judgment filed by two of the defendants in this case, Keffer and Townsend. That motion should be granted in part as to defendants Keffer and Townsend. All claims against defendant Beaumont, who is currently unserved and unrepresented, remain viable.

Procedural History

Before this court is a complaint filed pursuant to Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999 (1971), on July 24, 2009 and amended on September 1, 2009 (Doc. 3) and January 19, 2010 (Doc. 10), by pro se plaintiff Clarence Schreane ("Schreane").[1] The named defendants are Joe Keffer, (former) warden of the United States Penitentiary in Pollock, Louisiana ("USP-Pollock"), and Unit Manager Townsend

---

[1] The original complaint was used for purposes of this Report and Recommendation because the first amended complaint is missing a page (due to a scanner error) and the second amended complaint deals with exhaustion issues rather than Schreane's allegations.

and Unit Officer Beaumont, both employed by the Bureau of Prisons ("BOP") at USP-Pollock.

Schreane alleges in his complaint that, while he was incarcerated in the A-2 Unit of USP-Pollock on May 1, 2008, Unit Officer Beaumont was entertaining an inmate from the C-2 unit when a fight broke out in A-2. Schreane contends the warden had posted a January 2008 memorandum for inmates and staff to allow no inmates from other housing units into a unit to which they were not assigned. Schreane contends he had previously informed both Warden Keffer and Officer Townsend that Beaumont was allowing inmates from C-2 into the A-2 unit, thereby risking the lives of the inmates in A-2. Schreane further contends Beaumont labeled him a snitch by telling the C-2 inmates that Schreane complained to the warden about them visiting A-2; Schreane was assaulted by inmates later that day. Thus, Schreane has alleged failure to protect claims. For relief, Schreane asks for both general and punitive damages (Doc. 3). Schreane is presently confined in USP-Canaan in Waymart, Pennsylvania.

Waiver of service of process forms were mailed by the court to the three defendants in accordance with the agreement between the court, the U S. Attorney's office and the prison.[2]

---

[2] In April of 2009, William J. Flanagan as the First Assistant U.S. Attorney on behalf of the U.S. Attorney's office, Judy Luke of USP-Pollock, the warden at USP-Pollock at that time, and the undersigned, on behalf of this court, agreed to procedures which would be followed for service of process in cases involving defendants employed at USP-Pollock. Those procedures were put into place to avoid publication of prison employees' home addresses, disruption of the running of the prison by the U.S. Marshal, and to avoid having fees for service

Defendants filed a motion to dismiss for lack of jurisdiction or, alternatively, for summary judgment (Docs. 19, 23), to which Schreane filed a response (Doc. 25; see also Doc. 18). Defendants' motion is now before the court for disposition.

It is noted that there is no indication in the record before this court that any of the defendants waived service. The waiver forms were never returned to this court by the defendants (even though two of them are represented by the U. S. Attorney's office) and when the court mailed the waiver form to Beaumont care of the prison, the prison failed to advise the court, as required by the agreement, that Beaumont was not at the prison.

In filing the motion for summary judgment, however, defense counsel made a general appearance on behalf of Townsend and Keffer, submitting them to the jurisdiction of the court, but states in the motion that the U. S. Attorney is not representing Beaumont, contending Beaumont is a "non-party" in this case. Beaumont is still a party in this case, albeit unserved and unrepresented, and therefore will not be dismissed from this case.[3] An order for service on Unit Officer Beaumont, at the expense of the U.S. Attorney, will be issued separately.

Although defense counsel says in Footnote 1 of her brief that

process imposed on the U.S. Attorney's office.

[3] Although normally an unserved defendant would be dismissed from the case pursuant to Fed.R.Civ.P. rule 4. However, plaintiff attempted service, but the procedures agreed to were not followed by the prison. Since lack of timely service is certainly not attributable to Schreane, any service at this time, and any amendment to the pleadings to correct Beaumont's name, may still be considered as timely.

"Officer Beaumont was not served," neither were the other defendants. Defense counsel also says in her footnote, according to what she was told by an unnamed person at USP-Pollock, there are no records of an "Officer Beaumont" at USP-Pollock. (Of course, that may be due to nothing more than a misspelling of the name by plaintiff.) However, no motion[4] by defendants with an affidavit (showing there is no officer Beaumont) to support it was filed.

Moreover, defendants have never attempted to clarify for either Schreane or this court the correct name or correct spelling of the name of the unit officer, if it is not Beaumont, and, curiously, defendants' pleadings and affidavits conspicuously avoid naming the unit officer, only referring to her as "the Unit Officer." Townsend's affidavit makes it clear that he knows the identity of the unit officer referred to in the complaint. That information should have been provided to the court so that service of process could be made and this case finally resolved. It serves no useful purpose not to disclose that information.

<u>Law and Analysis</u>

<u>Motion to Dismiss for Lack of Subject Matter Jurisdiction</u>

Defendants contend Schreane's action against the Bureau of Prisons should be dismissed pursuant Fed.R.Civ.P. rule 12(b)(1), arguing this court lacks subject matter jurisdiction over this action, only the United States may be sued pursuant to the Federal Tort Claims Act, and the United States has sovereign immunity.

Schreane's action is filed pursuant to <u>Bivens v. Six Unknown</u>

---

[4] A footnote is not a motion.

Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999 (1971), and not pursuant to the Federal Tort Claims Act.[5] Moreover, Schreane did not name and serve the United States as a defendant in this case.

Bivens defendants are federal officials brought into federal court for violating the Federal Constitution. Bivens-type actions may be brought only against federal agents and not federal agencies. F.D.I.C. v. Meyer, 510 U.S. 471, 486, 114 S.Ct. 996, 1006, 127 L.Ed.2d 308 (1994); Whitley v. Hunt, 158 F.3d 882 885 (5th Cir. 1998). Under Bivens, a plaintiff may recover damages for any injuries suffered as a result of federal agents' violations of his constitutional rights. Channer v. Hall, 112 F.3d 214, 216 (5th Cir. 1997).

Since Schreane did not name the United States as a defendant and did not file this action pursuant to the Federal Tort Claims Act, defendants' motion to dismiss Schreane's Federal Tort Claims Act suit should be *denied as moot.*

Motion for Summary Judgment

Next, defendants contend there are entitled to a motion for

---

[5] Defendants' misconstruction was apparently done out of an abundance of caution because this court stated in a memorandum order that Schreane *may* be making an FTCA claim (Doc. 8). That statement was based on Schreane's statement in his original complaint that he had fully exhausted his administrative remedies by filing administrative remedies BP-9 through BP-11 *and by filing an administrative tort claim, No. TRT-SCR-2009-001131* (Doc. 1). However, the nature of the suit before this court is clearly solely under Bivens, since Schreane failed to avail himself of the opportunity to amend his complaint to add the United States as a defendant (See Doc. 8). Schreane's original, hand-written complaint clearly states at the top the it is filed pursuant to Bivens (Doc. 1).

summary judgment because (1) Schreane failed to exhaust his administrative remedies, (2) Schreane failed to state am Eighth Amendment claim against defendants for failure to protect, and (3) the defendants are entitled to qualified immunity.

1.

Rule 56 of the Federal Rules of Civil Procedure mandates that a summary judgment:

> "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, [submitted concerning the motion for summary judgment], if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Paragraph (e) of Rule 56 also provides the following:

> "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party."

Local Rule 56.2W (formerly 2.10W) also provides that all material facts set forth in a statement of undisputed facts submitted by the moving party will be deemed admitted for purposes of a motion for summary judgment unless the opposing party controverts those facts by filing a short and concise statement of material facts as to which that party contends there exists a genuine issue to be tried.

In this regard, the substantive law determines what facts are "material".  A material fact issue exists if the evidence is such

that a reasonable jury could return a verdict for the nonmoving party. However, the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to preclude summary judgment; there must be evidence on which the jury could reasonably find for the plaintiff. Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999), 528 U.S. 906, 120 S.Ct. 249 (1999), and cases cited therein.

If the movant produces evidence tending to show that there is no genuine issue of material fact, the nonmovant must then direct the court's attention to evidence in the record sufficient to establish the existence of a genuine issue of material fact for trial. In this analysis, we review the facts and draw all inferences most favorable to the nonmovant. Herrera v. Millsap, 862 F.2d 1157, 1159 (5th Cir. 1989). However, mere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient, therefore, to defeat a motion for summary judgment. Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir.), cert. den., 506 U.S. 825, 113 S.Ct. 82(1992).

## 2. Exhaustion

First, defendants contend they are entitled to a summary judgment in their favor because Schreane failed to exhaust his administrative remedies.

No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are

7

exhausted.   42  U.S.C.   §  1997e(a).   Exhaustion  is  mandatory,
irrespective  of  the  forms  of  relief  sought  and  offered  through
administrative  remedies.  Booth v. Churner, 532 U.S. 731, 741 n. 6,
121  S.Ct.  1819  (2001).   The  exhaustion  requirement  of  42  U.S.C.  §
1997e  applies  to  all  inmate  suits  about  prison  life,  whether  they
involve  general  circumstances  or  particular  episodes,  and  whether
they  allege  excessive  force  or  some  other  wrong.  Porter v. Nussle,
534  U.S.  516,  532,  122  S.Ct.  983,  992  (2002).   Thus,  federal
prisoners  suing  under  Bivens v. Six Unknown Fed. Narcotics Agents,
403  U.S.  388,  91  S.Ct.  1999,  29  L.Ed.2d  619  (1971),  must  first
exhaust  inmate  grievance  procedures  just  as  state  prisoners  must
exhaust  administrative  processes  prior  to  instituting  a  §  1983
suit.   Porter,  534  U.S.  at  524,  122  S.Ct.  at  988.   Resort  to  a
prison  grievance  process  must  precede  resort  to  a  court.  Porter,
534  U.S.  at  529,  122  S.Ct.  at  990.   See  also,  Jackson v. Dobre,
2002  WL  31016915,  48  Fed.Appx.  104  (5th  Cir.  2002)("futility  is  no
longer  an  exception  to  the  exhaustion  requirement").

     However,  the  exhaustion  requirement  imposed  by  amended  §  1997e
is  not  jurisdictional.  Wendell v. Asher, 162 F.3d 887, 890 (5th
Cir.  1998).   Also,  Woodford v. Ngo, 548 U.S. 81, 101, 126 S.Ct.
2378,  2392  (2006).   The  exhaustion  requirement  may  be  subject,  in
rare  instances,  to  certain  defenses  such  as  waiver,  estoppel,  or
equitable  tolling.  Wendell, 162 F.3d at 890.   Also,  Days v.
Johnson,  322  F.3d  863,  866  (5th  Cir.  2003).   Available
administrative  remedies  are  exhausted  in  compliance  with  the  PLRA
when  the  time  limits  for  the  prison's  response  set  forth  in  the

8

prison grievance procedures have expired. <u>Gates v. Cook</u>, 376 F.3d 323, 332 (5th Cir. 2004), citing <u>Underwood v. Wilson</u>, 151 F.3d 292, 295 (5th Cir. 1998). Also, <u>Mahogany v. Miller</u>, 252 Fed.Appx. 593, 594 (5th Cir. 2007)("the district court assumes that a prisoner's claims have been exhausted when his grievances were not processed within prescribed time limits").

Estoppel is an equitable doctrine invoked to avoid injustice in particular cases and a hallmark of the doctrine is its flexible application. Estoppel may provide a basis for excusing a prisoner's failure to exhaust administrative remedies. A party claiming estoppel must, amongst other things, demonstrate that he or she reasonably relied on the conduct of the other to his or her substantial injury. <u>Dillon v. Rogers</u>, 596 F.3d 260, 270 (5th Cir. 2010), citing <u>Mangaroo v. Nelson</u>, 864 F.2d 1202, 1204 (5th Cir. 1989)("to invoke equitable estoppel against a private party, a litigant must establish the four traditional common-law elements...").

The exhaustion requirement may be excused when administrative remedies are not "personally available." <u>Days</u>, 322 F.3d at 867. Unavailability can occur when physical injury prevents its use, <u>Days</u>, 322 F.3d at 867, or when prison officials ignore or interfere with the prisoner's pursuit of relief, <u>Underwood</u>, 151 F.3d at 295.

The administrative remedy procedures which must be followed by a federal prison inmate are set forth in 28 C.F.R. §§ 542.10, et seq. Those regulations provide for first step of an informal resolution attempt filed with the prison staff, a second step of a

formal grievance filed with the warden, and appeals at the third and fourth steps as set forth below in Section 542.15; the third step is an appeal of the warden's decision to the Regional Director, and the fourth step is an appeal of the Regional Director's decision to the General Counsel.

§ 542.15 Appeals.
(a) Submission. An inmate who is not satisfied with the Warden's response may submit an Appeal on the appropriate form (BP-10) to the appropriate Regional Director within 20 calendar days of the date the Warden signed the response. An inmate who is not satisfied with the Regional Director's response may submit an Appeal on the appropriate form (BP-11) to the General Counsel within 30 calendar days of the date the Regional Director signed the response. When the inmate demonstrates a valid reason for delay, these time limits may be extended. Valid reasons for delay include those situations described in § 542.14(b) of this part. Appeal to the General Counsel is the final administrative appeal.
(b) Form.
(1) Appeals to the Regional Director shall be submitted on the form designed for regional Appeals (BP-10) and accompanied by one complete copy or duplicate original of the institution Request and response. Appeals to the General Counsel shall be submitted on the form designed for Central Office Appeals (BP- 11) and accompanied by one complete copy or duplicate original of the institution and regional filings and their responses. Appeals shall state specifically the reason for appeal.
(2) An inmate may not raise in an Appeal issues not raised in the lower level filings. An inmate may not combine Appeals of separate lower level responses (different case numbers) into a single Appeal.
(3) An inmate shall complete the appropriate form with all requested identifying information and shall state the reasons for the Appeal in the space provided on the form. If more space is needed, the inmate may use up to one letter-size (8 ½ " x 11") continuation page. The inmate shall provide two additional copies of any continuation page and exhibits with the regional Appeal, and three additional copies with an Appeal to the Central Office (the inmate is also to provide copies of exhibits used at the prior level(s) of appeal). The inmate shall date and sign the Appeal and mail it to the appropriate Regional Director, if a Regional Appeal, or to the National Inmate Appeals Administrator, Office of General Counsel, if a Central Office Appeal (see 28 CFR part 503 for addresses

of the Central Office and Regional Offices).

According to an affidavit by Beth Hull, a Paralegal for the Bureau of Prisons, Schreane failed to exhaust his administrative remedies prior to brining this lawsuit (Doc. 19).  Hull states in her affidavit that Schreane filed a BP-9 and a BP-10 and received responses to both, but failed to file a BP-11 appeal.

Schreane argues in his brief (Doc. 25) that he exhausted his administrative remedies and attached copies of his complaints and the responses he received (Doc. 25), including his informal resolution attempt and response, his complaint to the warden and response, his regional appeal (BP-10), and his Central Office Appeal (BP-11).  Schreane did not include responses to the BP-10 and BP-11.  Schreane's copy of his BP-11 complaint shows he signed it on November 10, 2008 (Doc. 25).  According to the defendants, the BP-11 appeal was never filed (Doc. 19, Hull affidavit).

In his response to the motion for summary judgment (Doc. 25), Schreane argues he gave his BP-11 appeal, with the correct postage, to a prison official for mailing to the Central Office and that he never received a response to his BP-11 appeal.  Schreane argues that, by mailing his BP-11 appeal, he satisfied the exhaustion requirement when the time limit for the Central Office response expired.  However, the Central Office apparently never received Schreane's BP-11, since the BOP has no record of it (See Doc. 19, Hull affidavit).

Schreane's copy of his BP-11 appeal shows he wrote the BP-11 appeal, the BOP's records show there is no record of Schreane's BP-

11

11 appeal to the Central Office, and all parties appear to agree there has never been a response to Schreane's BP-11 appeal by the Central Office. Therefore, the possibilities as to what happened to Schreane's BP-11 appeal appear to be that (1) Schreane never gave his BP-11 appeal to a prison official for mailing, (2) Schreane's BP-11 appeal was never mailed by the prison officials, (3) Schreane's BP-11 appeal was lost in the mail, (4) Schreane's BP-11 appeal was mislaid in the Central Office, or (5) the Central Office never processed Schreane's BP-11 appeal.[6]

These possibilities create a genuine issue of material fact as to whether Schreane's administrative remedies should be considered exhausted. See Dockery v. U.S. Dept. of Justice, 2010 WL 2079939 (S.D.Tex. 2010); Hopes v. Mash, 2010 WL 3490991 (S.D.Ill. 2010); Singletary v. Reed, 2006 WL 1896990 (W.D.Wis. 2006)(in dealing with lack of exhaustion due to a lost BP-11 appeal, the court stated that an affidavit declaring that the plaintiff mailed his BP-11 appeal on December 16, 2005 together with a copy of the December 16 appeal would carry as much evidentiary weight as a videotape showing him dropping the letter in the mailbox).

Since there are genuine issues of material fact on the issue of exhaustion which preclude a summary judgment, defendants' motion for summary judgment for lack of exhaustion should be denied at this time.

---

[6] Schreane's prison account may reflect a withdrawal of funds for postage to mail his BP-11 form around November 10, 2008, or the BOP's mail logs may show whether Schreane's BP-11 form was received and mailed by the mailroom officers on or after November 10, 2008.

Failure to Protect Claim and Qualified Immunity

Next, defendants contend they are entitled to a summary judgment because Schreane has not demonstrated that they failed to protect him in violation of the Eight Amendment. Defendants further contend that, in any event, they are entitled to qualified immunity.

## 1. Qualified Immunity

The defense of qualified immunity protects a public official from both litigation and liability, absent a showing that the official violated a constitutional right that was clearly established at the time of the incident. Woods v. Smith, 60 F.3d 1161, 1164 (5th Cir. 1995), cert. den., 516 U.S. 1084, 116 S.Ct. 800 (1996). Qualified immunity cloaks a law enforcement officer from personal liability for discretionary acts which do not violate well established law. Officers have qualified immunity if their actions could reasonably have been thought consistent with the right they are alleged to have violated. Richardson v. Oldham, 12 F.3d 1373, 1380-81 (5th Cir. 1994), and cases cited therein. Qualified immunity operates to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful. Hope v. Pelzer, 536 U.S. 730, 122 S.Ct. 2508, 2515 (2002).

Invocation of the qualified immunity defense shifts the burdens of proof in federal civil rights (or Bivens) lawsuits brought against public officials for actions or omissions attending their performance of official duties:

13

> "The defendant official must initially plead his good
> faith and establish that he was acting within the scope
> of his discretionary authority. Once the defendant has
> done so, the burden shifts to the plaintiff to rebut this
> defense by establishing that the official's allegedly
> wrongful conduct violated clearly established law."

Bazan v. Hidalgo County, 246 F.3d 481, 489 (5th Cir. 2001), citing

Salas v. Carpenter, 980 F.2d 299, 306 (5th Cir. 1992).

The bifurcated test for qualified immunity is: (1) whether the
plaintiff has alleged a violation of a clearly established
constitutional rights; and, (2) if so, whether the defendant's
conduct was objectively unreasonable in the light of the clearly
established law at the time of the incident.   Hare v. City of
Corinth, 135 F.3d 320, 325 (5th Cir. 1998), and cases cited therein.

The first step is to determine whether the plaintiff has
alleged violation of a clearly established constitutional right.
This analysis is made under the currently applicable constitutional
standards.   Hare, 135 F.3d at 325.   A constitutional right is
clearly established if, in light of pre-existing law, the
unlawfulness is apparent.   Officials must observe general, well-
developed legal principles.   Doe v. Taylor Independent School
Dist., 15 F.3d 443, 445 (5th Cir.), cert. den., 513 U.S. 815, 115
S.Ct. 70 (1994).   In the case at bar, the alleged Eighth Amendment
failure to protect violations took place on May 1, 2008.   Schreane
alleges Beaumont admitted inmates from the C-2 housing unit into
Schreane's housing unit (A-2) in violation of clearly posted prison
policy.   Schreane further alleges that, although he told Warden
Keffer and Townsend about Beaumont's policy violations, they did
not take action to stop it.   Schreane also alleges that Townsend

told the C-2 inmates that Schreane had complained about them, resulting in them attacking Schreane later that day, May 1, 2008.

Prison officials have a duty to protect prisoners from violence at the hands of other prisoners.   Being violently assaulted in prison is simply not a part of the penalty that criminal offenders pay for their offenses against society.  Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 1976-1977 (1994). Labeling an inmate a snitch also violates a guard's duty to protect the inmate.  Irving v. Dormire, 519 F.3d 441, 451 (8th Cir. 2008); Benefield v. McDowall, 241 F.3d 1267, 1271-1272 (10th Cir. 2001); Valandingham v. Bojorquez, 866 F.2d 1135, 1138-1139 (9th Cir. 1989); Harmon v. Berry, 728 F.2d 1407, 1409 (11th Cir. 1984).  Also, Smith v. Rabalais, 659 F.2d 539 n.19 (5th Cir. 1981), cert. den., 455 U.S. 992, 102 S.Ct. 1619 (1982)(recognizing the danger involved when a prison informer's identity is revealed).  Therefore, Schreane has alleged the violation of a constitutional right that was clearly established in 2008.

Under the second prong of the qualified immunity test, the court must determine whether the conduct of the defendants was objectively unreasonable in the light of that then clearly established law.   Hare, 135 F.3d at 325-36.   Objective reasonableness is a question of law for the court.  The analysis for objective reasonableness is different from that for deliberate indifference (the subjective test for addressing the merits).  For qualified immunity, the subjective deliberate indifference standard serves only to demonstrate the clearly established law in effect at

15

the time of the incident and, under that standard (the minimum standard not to be deliberately indifferent), the actions of the individual defendants are examined to determine whether, as a matter of law, they were objectively unreasonable.  Hare, 135 F.3d at 328.

The qualified immunity doctrine does not protect an official whose subjective intent was to harm the plaintiff, regardless of the objective state of the law at the time of his conduct.  Douthit v. Jones, 619 F.2d 527, 533 (5th Cir. 1980).  A party seeking to avoid a qualified immunity defense must prove that the official either actually intended to do harm to him, or took an action which, although not intended to do harm, was so likely to produce injury that the harm can be characterized as substantially certain to result.  Douthit, 619 F.2d at 533.

2. The Eighth Amendment Right to Safety

The Eighth Amendment imposes duties on prison officials to provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of inmates.  Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 1977 (1994).  In particular, prison officials have a duty to protect prisoners from violence at the hands of other prisoners. Being violently assaulted in prison is simply not a part of the penalty that criminal offenders pay for their offenses against society.  Farmer, 114 S.Ct. at 1976-77.

For an inmate to succeed on a claim based on a failure to

16

prevent harm, he must show that (1) he was incarcerated under conditions posing a substantial risk of serious harm, and (2) the prison official was "deliberately indifferent" to his health or safety.   Failing to act with deliberate indifference to a substantial risk of harm is the equivalent of recklessly disregarding that risk.   <u>Farmer</u>, 114 S.Ct. at 1978.   Deliberate indifference is a subjective test and it must be shown that the official actually knew of the risk of harm to the inmate.   It is insufficient to show solely that the official should have known of the risk.   The official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference.   <u>Farmer</u>, 114 S.Ct. at 1979.

Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence. A fact finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.   It remains open to an official to prove that he was unaware of even an obvious risk to inmate health and safety.   <u>Farmer</u>, 114 S.Ct. at 1981-82.   Also, <u>Hinojosa v. Johnson</u>, 277 Fed.Appx. 370, 374 (5th Cir. 2008).   However, a prison official who actually knew of a substantial risk to inmate health and safety may be found free from liability if he responded reasonably to the risk, even if the harm ultimately was not averted.   <u>Farmer</u>, 114 S.Ct. at 1982-83.

The failure of a prisoner to give any advance notice to prison

17

officials of potential danger to the prisoner's safety is not
dispositive of the issue of the official's awareness, nor is
advance notice of a substantial risk of assault posed by a
particular fellow prisoner a prerequisite. <u>Farmer</u>, 114 S.Ct. at
1984-1985.

### 3. Failure to Protect Claim

In the case at bar, Schreane alleged in his verified complaint
and in his affidavit that Beaumont was assigned to supervise the A-
2 Unit on April 22, 2008 (Docs. 1, 18).  Schreane also alleged that
Beaumont allowed inmates from the unit she previously worked in, C-
2, to visit the A-2 unit, in violation of a posted policy
prohibiting any inmate from entering a housing unit to which he was
not assigned (Docs. 1, 18).  Schreane further alleged in his
complaint and affidavit that he told Unit Manager Townsend about
Beaumont's violations on April 27, 2008, and he told Warden Keffer
on about April 29, 2008 (Docs. 1, 18).  Schreane alleged that, on
May 1, 2008, he told Beaumont that her allowing C-2 inmates into
the A-2 unit was causing A-2 inmates to become irritated with her
(Docs. 1, 18).  However, at 6:30 p.m. on May 1, 2008, Beaumont
still allowed C-2 inmates into the A-2 housing unit and a fight
broke out in the Sally port outside of A-2 (Docs. 1, 18).  Schreane
alleged that Beaumont did not respond to the fight when other
officers did because she was not paying attention, but was instead
entertaining an inmate from C-2 (Docs. 1, 18).  Schreane alleged in
his complaint that, when Unit Manager Townsend locked down the A-2
unit, Schreane "discretely" advised him again that Beaumont had

18

been entertaining inmates from C-2 and identified one in A-2 at that time; three inmates from C-2 were then found in A-2 (Docs. 1). Schreane further alleged in his complaint that, at about 8:30 p.m. on May 1, 2008, a friend of one of the C-2 inmates who had been caught in A-2 approached Schreane in the activity room and confronted him about having reported the C-2 inmates to the officers (Docs. 1, 18).   Schreane alleged that he was then assaulted and injured by two inmates while another held the door (Doc. 1).

Schreane submitted a copy of the rules posted by Warden Keffer which prohibits inmates from visiting housing units other than their own (Doc. 1); as stated below, that policy memo was directed to both the inmates and BOP staff.   That policy memo states in pertinent part:

> January 8, 2008
> **MEMORANDUM FOR ALL STAFF AND INMATES**
> FROM:      Joe Keffer, Warden
> SUBJECT:  Inmate Expectations; Rules
>
> The purpose of this memorandum is to serve as a reminder to all inmates of some basic rules and regulations which must be followed.  I believe most inmates want to live in an institution where they can work and program without having to worry about being victimized or having their daily activities disrupted.   Unfortunately, there are some inmates who continue to engage in behavior which negatively impacts everyone.   These behaviors include assaults with weapons as well as destroying equipment and appliances meant for use by everyone.   Consequently, these types of behaviors cannot be tolerated.
>
> In order to ensure everyone clearly understands my expectations, the following is a list of rules which, beginning immediately, will be enforced without question. These rules are not new, however, they have not been followed to my standards and greater restrictions appear to be necessary.  Please read and familiarize yourself with these regulations.   Your compliance with each of

19

them is mandatory and there will be zero tolerance for anything less.

### INMATE EXPECTATIONS/RULES
**********

–     Inmates are not allowed in any housing unit other than the one to which they are assigned."

Schreane alleges under penalty of perjury that Beaumont allowed inmates from the C-2 housing unit into the A-2 housing unit (Doc. 1).   That contention is not refuted by defendants in the affidavits by Townsend and Keffer or in defendants' statement of undisputed facts (Doc. 19), and is therefore deemed admitted pursuant to Fed.R.Civ.P. rule 8(b)(6).   There is no affidavit from Beaumont in the record.   The purpose behind the policy, of reducing inmate assaults and other misconduct, is stated and apparent.   See Rose v. Carey, 2008 wl 4443229, *5 (S.D.Ind. 2008)("Prisons are dangerous places, and require rigorous security measures to insure inmate and staff safety. Restricting inmate movement, and knowing where inmates are at any point in time, are integral components of providing for inmate and staff security.").   According to the Bureau of Prisons' website,[7] USP-Pollock is a high security institution.

Accepting Schreane's unrefuted assertion as true for purposes of this motion, it is clear that the Unit Officer violated USP-policy by allowing C-2 inmates to visit the A-2 housing unit and thereby created an obvious risk, of which she was aware, to Schreane's safety.   Defendants argue that Schreane was assaulted

---

[7] See http://www.bop.gov/locations/institutions/pol/ index.jsp.

due to his own indiscreet complaints in front of other inmates. However, there would have been nothing for Schreane to complain about had the Unit Officer adhered to the mandatory rules against allowing inmates into a housing unit to which they were not assigned.   Had she followed the rules and not admitted the C-2 inmates into the A-2 unit, none of the subsequent events would have occurred and Schreane would not have been assaulted.   Therefore, Schreane has  stated an Eighth Amendment claim against Beaumont for endangering him by breaking a clearly stated security rule intended to protect both inmates and staff, thereby failing to protect Schreane.  Schreane also states in his affidavit (Doc. 18) that, on April 27, 2008, he told Officer Townsend on April 27, 2008 that Beaumont had been violating the rules by allowing C-2 inmates into the A-2 housing unit, and that he told Warden Keffer the same thing on April 29, 2008.

Townsend, the A-2 Unit Manager, states in his affidavit (Doc. 19) that he does not recall Schreane having reported the Unit Officer's activities with the C-2 inmates to him on April 27, 2008. The response to Schreane's informal grievance states that the investigation into the matter showed Townsend spoke to Beaumont about the rule violations on May 1, 2008 after the inmate fight and the C-2 inmates were found in the A-2 unit (Doc. 25).   Townsend contends in his affidavit that Schreane complained to him very loudly about Beaumont allowing the C-2 inmates into the A-2 unit, he told Schreane he needed to quiet down and discuss it with Townsend later in a different place because other inmates could

hear him, but he would talk to Beaumont about the situation, and 30 minutes later he was informed Schreane had been assaulted by an A-2 inmate, before Townsend had a chance to talk to Beaumont (Doc. 19). Townsend also states in his affidavit that he had no advance knowledge that Schreane would be assaulted (Doc. 19).

Warden Keffer states in his affidavit (Doc. 19) that he also does not recall Schreane having told him on April 29, 2008 that Beaumont was allowing C-2 inmates into the A-2 housing unit. However, Keffer further states in his affidavit that, prior to May 1, 2008, he had instructed both inmates and staff that inmates were not allowed to enter housing units to which they were not assigned (Doc. 19).  Keffer states in his affidavit that he was not aware of any threats to Schreane and understood that he had been attacked by another A-2 unit inmate (Doc. 19).

First, Townsend and Keffer both contend they were not aware of any risk of harm to Schreane, but neither of them have denied that Schreane complained to them before May 1 about Beaumont's activities; they state only that they do not remember.  The risk of harm from inmates being in a housing unit to which they are not assigned is self-evident and discussed above; it constitutes a security issue for both inmates and staff.  However, given the short time frame between Schreane's alleged complaints to Warden Keffer on April 27, 2008 and to Townsend on April 29, 2008 and the incidents which took place on May 1, 2008, it is not evident that either Keffer or Townsend simply ignored Schreane's information and failed to begin investigating his allegations.  It is unfortunate

22

that neither of them has a recollection or record of Schreane's earlier complaints and their responses, if any, to them. However, due to the short time frame, Schreane has not shown that either Keffer or Townsend violated his constitutional right to safety by failing to timely investigate and curb Beaumont's alleged security violations.

Since there are no genuine issues of material fact which would preclude a summary judgment, defendants' motion for summary judgment should be granted in favor of Townsend and Keffer and they are entitled to qualified immunity. Since this motion was not filed on behalf of Beaumont, Schreane's claim against Beaumont remains viable.

### 4. Snitch Claim

Defendants also contend they are entitled to a summary judgment on Schreane's claim that he was assaulted because he was labeled a snitch by Beaumont. To the extent defendants appear to argue that Townsend did not label Schreane a snitch, that argument is correct. Although Schreane's claims are not always clearly worded, he actually only contends that Beaumont labeled him a snitch. Therefore, Keffer and Townsend's motion for summary judgment should be granted as to Schreane's snitch claim. Since this motion was not filed on behalf of Schreane, Schreane's snitch claim against Beaumont remains viable.

### Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that Townsend's and Keffer's motion to dismiss (Doc. 19) Schreane's FTCA

action be DENIED AS MOOT.

IT IS FURTHER RECOMMENDED that Townsend's and Keffer's motion for summary judgment (Doc. 19) for lack of exhaustion be DENIED.

IT IS FURTHER RECOMMENDED that Townsend's and Keffer's motion for summary judgment (Doc. 19) be GRANTED in favor of Warden Keffer and Townsend on Schreane's failurr to protect claim.

IT IS FURTHER RECOMMENDED that Townsend's and Keffer's motion for summary judgment (Doc. 19) be GRANTED in favor of Warden Keffer and Townsend on Schreane's snitch claim.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) CALENDAR DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this 23rd day of September, 2010.

JAMES D. KIRK
United States Magistrate Judge

24